IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUIS D. PAOLINO, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 611 |
| | ) |
| HUSSAIN EGAN BENDERSKY & | ) Judge Rebecca R. Pallmeyer |
| FRANCZYK, L.L.C., AND | ) |
| JOHN FRANCZYK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In a five-count complaint, Plaintiff Louis D. Paolino, Jr. charges Attorney John Franczyk and his law firm with participating with a lender, Argyll Equities, LLC ("Argyll"), in a scheme to defraud Plaintiff of shares he held in Mace Security International, Inc. ("Mace"). Defendants have moved to dismiss the complaint. For the reasons explained here, the motion is granted in part and denied in part.

## FACTS

The complaint alleges the following: Paolino is President and CEO of Mace, a publicly-traded company whose shares are registered with SEC and listed on the NASDAQ. Until 2004, Plaintiff owned 1.19 million shares (having a value in excess of $6 million) of Mace. (Complaint, ¶ 6.) Early in 2004, Paolino alleges he "pledged his stock as collateral for a consumer loan" in the amount of $4.1 million from Argyll. Jeffrey Spanier of AmeriFund Capital Finance LLC ("AmeriFund") negotiated the deal (*id.* ¶ 9), allegedly with knowledge that Argyll intended immediately to convert the loan collateral. (*Id.* ¶¶ 9, 11.) Argyll did in fact breach the loan agreement by selling Plaintiff's stock at a significant profit almost immediately, without notice to Paolino and in the absence of any default on his part. (*Id.* ¶¶ 8, 18.) Franczyk and his firm joined a conspiracy with Argyll by making material misrepresentations concerning Argyll's ownership, in

order to deter Paolino from filing suit. Specifically, in a November 5, 2004 letter, Franczyk, acting as Argyll's attorney, offered to "defer [Argyll's] exercise of its rights" in the collateral on the condition that Paolino make past-due payments. This "offer" was false, according to Plaintiff, because Argyll had already sold the shares given in collateral for the loan and because, due to Argyll's failure to provide him with notice of the precise amount due in interest payments, Plaintiff was not in default with respect to his loan obligations at all. (*Id.* ¶¶ 22, 24,26.) Franczyk negotiated a "standstill" agreement with Paolino; relying on Franczyk's statements and on statements made by "Miceli and McClain, both principals of Argyll . . . that no action would be taken with regard to his Mace stock," Paolino honored that standstill agreement until December 16, 2004, when he sued Argyll in a Texas state court. (*Id.* ¶ 27, 28, 29.)

Plaintiff alleges that "Defendants Argyll, McClain, Miceli and Spanier" defrauded another borrower in a similar manner in 2003. (*Id.* ¶ 30-31.) (Argyll, McClain, Miceli and Spanier are not in fact named as Defendants in this case.) He cites a judgment entered by a court in Hong Kong in favor of Siko Venture Limited on July 30, 2004, where, as in this case, Spanier acted as broker for a collateralized loan, and Argyll unlawfully sold shares tendered as collateral for a loan, almost immediately after that loan had been negotiated. (*Id.* ¶ 31.)

**DISCUSSION**

In this lawsuit, Plaintiff asserts claims for unjust enrichment (Count I); civil conspiracy (Count II); fraud (Count III); violations of the Racketeer Influenced Corrupt Organizations Act ("RICO") (Count IV); and conspiracy to violate RICO. (Count V.) Defendants Franczyk and his law firm move to dismiss all five counts with prejudice.

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim for relief. *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In considering such a motion, the court assumes all facts alleged in the complaint are true and views the allegations in the light most favorable to plaintiff. The court is also permitted to

2

consider documents attached as exhibits to the complaint, FED. R. CIV. P. 10(c); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002), including, in this case, the loan agreement between Plaintiff and Argyll, and correspondence between Plaintiff and Defendant Franczyk. The court should grant a Rule 12(b)(6) motion only where the plaintiff can prove no set of facts, consistent with his allegations, that would support his claim for relief. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). The court addresses Plaintiff's claims in light of these standards.

**Count I: Unjust Enrichment**

To state a claim for unjust enrichment under Illinois law,[1] plaintiff must allege that the defendant has unjustly retained a benefit to plaintiff's detriment and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience. In the most straightforward case, the plaintiff seeks to recover payment for services he rendered that benefitted the defendant. *See, for example*, *Williams v. National Housing Exchange, Inc.*, 949 F. Supp. 650, 652 (N.D. Ill. 1996) (denying motion to dismiss where the claimant had provided services in connection with managing a mortgage portfolio that benefitted the counterdefendant, but for which the counterdefendant had refused to pay). The Illinois Supreme Court has recognized three situations in which an unjust enrichment claim arises where the benefit the plaintiff is seeking to recover did not "proceed[] directly from him to the defendant," but instead reached the defendant via a third party: (1) where the third party mistakenly gave the benefit, intended for plaintiff, to the defendant; (2) where the defendant procured a benefit from the third party through some type of wrongful conduct; or (3) where the plaintiff for some other reason has a better claim to the benefit than does defendant. *HPI Health Care Servs. Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 135, 161-62, 545 N.E.2d 672, 679 (1989).

---

[1] Because the parties assume Illinois law controls the common law claims in this case, the court will do the same. *See Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001).

The court is uncertain how this theory applies to the circumstances alleged here. Certainly Plaintiff has not suggested that he rendered services to Defendant Franczyk and is entitled to be paid for them. Instead, Plaintiff alleges without elaboration that Franczyk and his firm have been unjustly enriched "by the amount of consideration they received from their participation in the scheme to defraud Paolino." (Complaint ¶ 37.) The court presumes that Franczyk, who was allegedly acting as Argyll's lawyer when he corresponded with Plaintiff, was paid by Argyll for his services. But whatever hourly rate Argyll may have paid Mr. Franczyk bears no relationship to the loss Plaintiff allegedly suffered as a result of Franczyk's misdeeds. Plaintiff may believe that Franczyk shared in the profits he claims Argyll enjoyed from the sale of the Mace shares. If so, Mr. Franczyk is properly charged with conspiracy to commit the tort of conversion, not unjust enrichment.

Count I for unjust enrichment is dismissed without prejudice.

**Count II: Civil Conspiracy**

Defendant argues that Count II must be dismissed because "Illinois law does not recognize a tort of conspiracy to commit a tort." (Defendant John Franczyk's Motion to Dismiss and Memorandum [hereinafter, "Franczyk Memo"], at 7.) There is some case law that supports this assertion, see *Heritage/Remediation Engineering, Inc. v. Wendnagel,* No. 89 C 413, 1989 WL 153373, *9 (N.D. Ill. Nov. 9, 1989) (citing *Cenco, Inc.v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982) ("If there is a conspiracy and it fails, there is no injury and hence no tort liability; if it succeeds, the damages are fully recoverable in an action on the underlying tort")); *compare Real Colors, Inc. v. Patel*, 974 F. Supp. 645, 651 (N.D. Ill. 1997) (granting 12(b)(6) motion, but observing that "[c]onspiracy alleging a tort as the underlying wrongful act is actionable, as long as it includes additional defendants or new facts not already pled in the underlying tort.")

A civil conspiracy, under Illinois law, is no more than the agreement of two or more people to commit an unlawful act, or to inflict a wrong on another person, and an overt act that causes

4

harm. *Old Sec. Life Ins. Co. v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 740 F.2d 1384 (7th Cir. 1984) (citing *Lenard v. Argento,* 699 F.2d 874 (7th Cir.), *cert. denied*, 464 U.S. 815 (1983)); *Zokoych v. Spalding,* 36 Ill. App. 3d 654, 667-68, 344 N.E.2d 805, 816-17 (1st Dist.1976); *Reel v. City of Freeport*, 61 Ill. App. 2d 448, 453-54, 209 N.E.2d 675, 677-78 (2d Dist.1965). As this court understands Paolino's complaint, in Count II he seeks to impose liability on Defendant Franczyk for acts performed by Argyll and its agents; that is, Plaintiff contends that Franczyk is liable not only for the harm caused by his own alleged misrepresentations (his statements that Argyll would forbear from selling shares it had already in fact sold), but also for the harm caused by the sale itself. Notably, the complaint makes no mention of any involvement Franczyk had with that sale, or indeed with the negotiation of the loan agreement itself. Whether Plaintiff can prove that Franczyk entered into an agreement with Argyll and/or its agents is not, however, for the court to decide at this stage. The motion to dismiss Count II is denied.

**Count III: Fraud/Fraudulent Inducement**

To establish a claim of fraud under Illinois law, a plaintiff must show (1) that the defendant made false statements of material fact (2) that he knew or believed were false (3) with the intent to induce action (4) which the plaintiff reasonably believed and justifiably relied upon and (5) was damaged as a result. *Kapelanski v. Johnson*, 390 F.3d 525, 530-31 (7th Cir. 2004). In federal court, an allegation of fraud is subject to the heightened pleading standard of FED. R. CIV. P. 9(b).

Defendant argues that the court should dismiss Plaintiff's fraud allegations for failure to comply with those heightened pleading standards. In addition, he argues that any fraud claims are barred by the loan documents; that Argyll "simply exercised its contract rights" under those loan documents; and that Plaintiff's claim is not ripe until he exercises his option to retrieve the Mace shares upon full payment of the loan. (Franczyk Memo at 8-11.) The court addresses these arguments in turn.

The Seventh Circuit has explained that Rule 9(b) does not require a plaintiff to plead facts

5

that if true would show that the defendant's alleged misrepresentations were indeed false. It does, however, require him to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992) *(citing Bankers Trust Co. v. Old Republic Ins. Co*, 959 F.2d 677, 683 (7th Cir.1992)); *Graue Mill Dev. Co. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 992-93 (7th Cir.1991). In other words, the plaintiff must plead the "who, what, when, and where" of the alleged fraud. The court agrees with Plaintiff Paolino that his allegations meet this test: He has identified Franczyk himself as making false statements concerning Argyll's willingness to desist from selling the Mace shares, by way of letter and e-mail correspondence, on particular dates in 2004.

Nor is the court persuaded at this stage by Defendant's contract-based defenses. Whatever rights the loan agreement afforded to Argyll with respect to the shares, it did not shield Franczyk from liability for false statements he made concerning the actions Argyll had already taken. In any case, the agreement does not appear to give Argyll the right to sell the shares beginning in April 2004, prior to the occurrence of any default, as Plaintiff alleges it did. (Complaint ¶ 18.)[2] And regardless what recourse Paolino might have to retrieve his shares after payment in full on the loan, his claim for the harm he suffered as a result of Franczyk's false statements is ripe.   The court's concern about Paolino's fraud claim relates to the harm itself. Plaintiff alleges that he received an e-mail message from Franczyk on November 5, 2004, and that "[i]n reliance on Franczyk's promise that the Mace stock was still being held, Paolino did not pursue immediate action and agreed to a 'standstill agreement' to pursue negotiations with Argyll." (Complaint ¶ 26.)

---

[2]   The court is uncertain precisely when Argyll sold the shares and expresses no opinion on whether the sale was authorized under the terms of the agreement. Nor does the court endorse Plaintiff's interpretation of section 2.2 of the loan agreement as requiring Argyll to provide him with notice of the precise interest calculation prior to the payment due date. (Private Collateralized Loan Agreement, Ex. A to Complaint, § 2.2.)

Paolino and Franczyk allegedly did agree to a "standstill" to continue negotiations until December 23, 2004. (*Id.* ¶ 27.) Plaintiff alleges that he did "then" file an action against Argyll seeking damages and a TRO (*id.* ¶ 29); in his memorandum of law, he asserts he filed suit on December 16, 2004, a week before the termination of the standstill. Thus, by his own allegations, Paolino was misled and lulled by Franczyk's false statements for no more than a few weeks. Paolino contends he was harmed by Argyll's precipitous disposition of his shares, beginning in April 2004. What he has not explained is how the alleged fraud – Franczyk's false statements – harmed him. Plaintiff has not suggested, for example, that it would have been possible for him to retrieve the shares had he filed his lawsuit earlier. Nor has he suggested that Franczyk's statements preclude any other remedy against Argyll that would have been available, had he filed suit on November 5, 2004, when Franczyk allegedly first lied to him.

The court dismisses Count III of the complaint without prejudice to an amendment that would identify the harm Paolino suffered as a result of the alleged fraudulent misrepresentations.

**Counts IV and V: RICO**

In Counts IV and V of the Complaint, Plaintiff charges Franczyk with violating, and conspiring with others to violate, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S. C. §§ 1962(a), 1962(d). RICO makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c). To state a RICO claim against Franczyk, Plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Bressner v. Ambroziak*, 379 F.3d 478, 481-82 (7th Cir. 2004) (internal quotations omitted). In addition, to establish damages under § 1964(c), Plaintiff must show that Defendant's conduct proximately caused his injuries. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

Franczyk contends the RICO counts must be dismissed "for at least 9 good reasons." (Franczyk Memo, at 12.) He again objects to Plaintiff's allegations as inadequate under Rule 9(b). He urges that Plaintiff's allegations are insufficient to establish a "pattern" of racketeering activity or an "enterprise" within the meaning of those terms set forth in the statute. He argues, further, that Plaintiff has not alleged that Franczyk himself obtained income from a pattern of racketeering or invested funds in a RICO enterprise. He contends that the "heart" of Plaintiff's claim is one for breach of the loan agreement, and that a breach of contract does not constitute a RICO violation. He again contends Plaintiff's claim is not ripe. He argues that because the challenged conduct is actionable as securities fraud, Plaintiff's RICO claims are barred by the Private Securities Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964(c). He again contends that until Plaintiff pays his loan to Argyll in full, his claim is not ripe. Finally, Defendant argues that allegations of his association with an enterprise, absent a showing of an agreement to participate in at least two criminal acts, does not constitute a conspiracy to violate RICO under 18 U.S.C. § 1962(d).

The court is not prepared to address all of these scattershot defenses, but some appear to have traction. First, our Court of Appeals has explained that "'a RICO complaint must identify the enterprise.'" *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (citing *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)). An "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise can be formal or informal, but there must be some type of organizational structure. *Stachon,* 229 F.3d at 675 (quoting *Richmond,* 52 F.3d at 645; *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 931 (7th Cir.1999)). "[A] RICO enterprise is 'more than a group of people who get together to commit a 'pattern of racketeering activity.'" *Stachon,* 229 F.3d at 675 (quoting *Richmond*, 52 F.3d at 645). Instead, a RICO enterprise must have "'an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to

8

hierarchical or consensual decision making.'" *Stachon*, 229 F.3d 675 (quoting *Jennings v.* Emry, 910 F.2d 1434, 1440 (7th Cir. 1990)). This organization must have "'a structure and goals separate from the predicate acts themselves.'" *Stachon*, 229 F.3d 675 (quoting *United States v. Masters*, 924 F.3d 1362, 1367 (7th Cir. 1991)).

The court is uncertain that the enterprise alleged by Plaintiff here meets this test. According to Plaintiff, the enterprise "consists of Argyll, McClain and Miceli as the lenders, Spanier and AmeriFund as the brokers and counsel who attempt to mislead borrowers." (Complaint, ¶ 51.) Plaintiff has alleged that Jeffrey Spanier of AmeriFund Capital Finance, LLC negotiated the loan transaction on behalf of Argyll (*id.* ¶ 11) and that McClain and Miceli are "principals of Argyll" who, like Defendant Franczyk, made false representations that "no action would be taken with regard to [Paolino's] Mace stock." (*Id.* ¶ 28.) Apart from these allegations concerning their roles in the alleged wrongdoing, Plaintiff has not identified any organizational structure or hierarchy. Indeed, his description of the alleged enterprise identifies no goals or structure separate from the alleged predicate acts themselves. But the Seventh Circuit has "repeatedly stated that RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does." *Stachon*, 229 F.3d at 676 (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) ("[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does.")).

Plaintiff contends his allegations concerning Argyll's dispute with Siko are sufficient to establish a "pattern" of racketeering, but again, the court is less certain. The requirement of establishing "pattern" is central to a claim that RICO has been violated, *Pizzo v. Bekin Van Lines Co.,* 258 F.3d 629, 633 (7th Cir. 2001) (citing *H.J.,Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989)), but two disputes is ordinarily insufficient to establish such a pattern, absent any "evidence that would enable a trier of fact to extrapolate from them a danger of recurrence." *Pizzo*, 258 F.3d at 633. Plaintiff sees such evidence in testimony of "Argyll's counsel Nunley proffered in

9

the Siko Lawsuit that Argyll's actions were not unlawful." (Complaint ¶ 54.) What Plaintiff cites in support of that assertion is the Hong Kong court's summary of attorney Nunley's testimony. (Judgment of the Hong Kong Special Administrative Region Court, Ex. J to Complaint, at 11.) As the court reads that summary, however, Nunley did not assert that Argyll's conduct was lawful; he simply asserted that the forum selection clause in the loan agreement in the Siko case required the parties to bring litigation challenging Argyll's conduct in Kendall County, Texas.[3]

Most significantly, whatever the merits of Plaintiff's purported RICO claims against Argyll, his allegations do not create an inference that Franczyk himself, or his law firm, are liable for such claims. To conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The Seventh Circuit has explained that "in the conspiracy context, the *Reves* test clarifies that the person charged must 'knowingly agree to perform services of a kind which facilitate the activities of those who are operating [or managing] the enterprise in an illegal manner.'" *United States v. Cummings*, 395 F.3d 392, 397-98 (7th Cir. 2005) (citations omitted). Paolino offers no explanation of how Franczyk's alleged false statements facilitated Argyll's conversion of his shares. Nor has he suggested that Franczyk made any similar false statements, or otherwise facilitated, the Siko transaction. The best that Plaintiff can do in this regard is to note that Franczyk signed a waiver of service in his capacity as general counsel for Argyll in an action to enforce the Siko judgment in Texas. Accepting service of process in a case in which the plaintiff seeks to enforce an adverse judgment simply cannot be characterized as "facilitating" the criminal enterprise that the judgment seeks to address.

---

[3] Nunley's testimony in this regard was presumably rejected by the Hong Kong court. In his memorandum in opposition to this motion, Plaintiff notes that the federal court in the Western District of Texas enforced a similar forum selection clause in Paolino's own loan agreement. (Plaintiff's Memorandum of Points and Authorities, at 7.) Plaintiff has not suggested that the federal court thereby concluded that Argyll's conduct was lawful.

Without reaching Defendant's remaining arguments, the court concludes his motion to dismiss Counts IV and V must be granted.

## CONCLUSION

Defendant's motion to dismiss (21) is granted in part and denied in part. Counts I, III, IV, and V of the Complaint are dismissed without prejudice to the filing of an amended complaint within 21 days. The court notes that the surviving claim (Count II) arises under state law. Should Plaintiff elect to proceed only on state law claims, he must amend his jurisdictional allegations to identify the members of Defendant Hussain Egan Bendersky & Franczyk, LLC and their citizenship. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

Status conference set for 8/02/2006 is stricken and reset to 9/6/06 at 9:00 a.m.

ENTER:

Dated: July 11, 2006

_____
REBECCA R. PALLMEYER
United States District Judge